IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN (WATERLOO) DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 23-CR-02065 |
| | ) | |
| Plaintiff, | ) | **INDICTMENT** |
| | ) | |
| vs. | ) | Count 1 |
| | ) | 18 U.S.C. § 1343: Wire Fraud |
| SHALLA SCHERRICE COLE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

The Grand Jury charges:

## Count 1

## Wire Fraud

### Introduction

*COVID-19 and the National Emergency*

1. According to the United States Centers for Disease Control and Prevention ("CDC"), Coronavirus Disease 2019 ("COVID-19") is a respiratory illness that can spread from person to person. The virus that causes COVID-19 is a novel coronavirus that was first identified during an investigation into a 2019 outbreak in Wuhan, China. COVID-19 can attack human lungs and kill infected persons, especially those who have certain risk factors identified by the CDC.

2. On March 13, 2020, then-President Donald J. Trump issued a Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak ("the Emergency Proclamation"). The Emergency Proclamation noted that "on March 11, 2020, the World Health

Organization announced that the COVID-19 outbreak can be characterized as a pandemic, as the rates of infection continue to rise in many locations around the world and across the United States." Further, "[t]he spread of COVID-19 within our Nation's communities threatens to strain our Nation's healthcare systems."

*The Paycheck Protection Program*

3. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in late March 2020 that provided emergency financial assistance to the millions of Americans who were suffering the economic effects of the COVID-19 pandemic. One form of such financial assistance was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). Later, in April 2020, Congress authorized an additional $300 billion in PPP funding, and, in March 2021, it extended the PPP application deadline through May 31, 2021.

4. To obtain a PPP loan, a business submitted a PPP loan application (SBA Form 2483), which had to be signed by an authorized representative of the business. The loan application required the business, through its authorized representative, to acknowledge the PPP program rules and to make certain affirmative certifications regarding its eligibility. In the application, the small business's authorized representative had to provide, among other things, the business's average monthly payroll expenses and number of employees. These figures were used to calculate the business's eligibility and the amount of money it

may receive under the PPP. In addition, businesses applying for a PPP loan had to provide documentation showing their payroll expenses.

5. A PPP loan application had to be processed by a participating lending financial institution. If a PPP loan application was approved by the participating financial institution, that institution funded the PPP loan using its own monies, which were 100% guaranteed by the Small Business Administration (SBA). Participating financial institutions required that the information provided in PPP loan applications be truthful, including supporting tax forms and information about the applicant business's employees and payroll expenses, which was material to the financial institution's approval and the terms of the PPP loans.

6. Information from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lending financial institution to the SBA in the course of processing the loan.

7. PPP loan proceeds had to be used by the business for certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The SBA allowed the principal and interest on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these items within a designated period of time, usually within twenty-four weeks of receiving the proceeds, and if the business also used at least 60% of the PPP loan proceeds for payroll expenses.

3
Case 6:23-cr-02065-CJW-MAR   Document 3   Filed 09/20/23   Page 3 of 6

may receive under the PPP. In addition, businesses applying for a PPP loan had to provide documentation showing their payroll expenses.

5. A PPP loan application had to be processed by a participating lending financial institution. If a PPP loan application was approved by the participating financial institution, that institution funded the PPP loan using its own monies, which were 100% guaranteed by the Small Business Administration (SBA). Participating financial institutions required that the information provided in PPP loan applications be truthful, including supporting tax forms and information about the applicant business's employees and payroll expenses, which was material to the financial institution's approval and the terms of the PPP loans.

6. Information from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lending financial institution to the SBA in the course of processing the loan.

7. PPP loan proceeds had to be used by the business for certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The SBA allowed the principal and interest on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these items within a designated period of time, usually within twenty-four weeks of receiving the proceeds, and if the business also used at least 60% of the PPP loan proceeds for payroll expenses.

*The Account*

8. At all relevant times, defendant SHALLA SCHERRICE COLE maintained an account at Credit Union 1. Credit Union 1 is a regional credit union with branches throughout the State of Iowa, including within the Northern District of Iowa.

9. Specifically, in or about January 2021, defendant SHALLA SCHERRICE COLE opened an account ending in 5682 at Credit Union 1, as the sole owner of the account.

The Scheme to Defraud

10. Starting in or about May 2021 and continuing to at least August 2022, in the Northern District of Iowa and elsewhere, defendant SHALLA SCHERRICE COLE did voluntarily and intentionally (1) participate in a scheme and artifice to defraud the SBA, an SBA-lending institution, and Credit Union 1 with knowledge of its fraudulent nature and (2) obtain the money and property of the SBA, the SBA-lending institution, and Credit Union 1 by means of false and fraudulent pretenses, representations, and promises (collectively, "the scheme to defraud"). Specifically, it was part of the scheme to defraud to receive SBA-funded PPP loan funds by means of a false and fraudulent application for the loan to the SBA-lending institution and other financial institutions, including but not limited to false statements about the existence of a business, and to obtain forgiveness of the PPP loan, by means of false and fraudulent pretenses, representations, and

promises, including but not limited to false statements about complying with all the requirements of the PPP Rules.

## Manner and Means of the Scheme to Defraud

11. It was part of the scheme to defraud that, on or about May 15, 2021, an SBA Form 2483-C containing defendant's signature was completed and submitted for a $20,415 PPP loan for the "Business Legal Name" of "Shalla Cole," listing the business type as child day care services (NAICS Code 624410). The SBA Form 2483-C listed defendant's Social Security Number (SSN) as the business taxpayer identification number (TIN).

12. It was also part of the scheme to defraud that defendant made false and fraudulent representations on the SBA Form 2483-C. Specifically, defendant falsely and fraudulently indicated that her business had a gross income amount from 2019 in the amount of $98,000.

13. It was also part of the scheme to defraud that false and fraudulent documents were submitted in support of the PPP loan. Specifically, a false and fraudulent Schedule C, Form 1040 or 1040-SR, Profit or Loss From Business for 2020, indicated a gross income of $98,000 and no expenses (including $0 of wages), which resulted, according to the false and fraudulent Schedule C, a profit of $98,000.

14. Finally, it was part of the scheme to defraud that, on or about August 30, 2022, after defendant SHALLA SCHERRICE COLE received the PPP loan at Credit Union 1 based on false and fraudulent representations to the SBA

and its participating lender, a false and fraudulent PPP Loan Forgiveness Application Form 3508S containing defendant's signature was submitted, and later granted, stating that she had complied with all requirements in the PPP Rules, when, in fact, defendant had knowingly and intentionally not complied with all requirements in the PPP Rules and had falsely and fraudulently obtained the PPP loan.

## Execution of the Scheme to Defraud

16. Starting in or about May 2021 and continuing to at least August 2022, in the Northern District of Iowa, and elsewhere, for the purpose of executing or attempting to execute the above-described scheme and artifice to defraud and to obtain property and money by means of false and fraudulent pretenses and representations, defendant SHALLA SCHERRICE COLE knowingly caused to be transmitted by means of wire in interstate commerce, the following writings, signs, signals, pictures, or sounds:

**Count 1:** On or about June 4, 2021, defendant SHALLA SCHERRICE COLE received an interstate wire in the amount of $20,415 from an SBA-lending institution into her account at Credit Union 1.

This was in violation of Title 18, United States Code, Section 1343.

TIMOTHY T. DUAX
United States Attorney

By: /s/ Dillan Edwards

DILLAN EDWARDS
Assistant United States Attorney

A TRUE BILL

/s/Foreperson     09-19-2023
Grand Jury Foreperson     Date

PRESENTED IN OPEN COURT
BY THE
FOREMAN OF THE GRAND JURY

And filed 9/20/2023